UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) 1:18-cr-00252-TWP-MJD |
| | ) |
| v. | ) |
| | ) |
| DAYONTA MCCLINTON | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Comes now the Defendant, Dayonta McClinton, and respectfully submits his Sentencing Memorandum for this Honorable Court's consideration.

Mr. McClinton stands before this Court awaiting sentencing for one count of Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a), and one count of Using a Firearm During and in Relation to a Crime of Violence, in violation of U.S.C. § 924(c)(1)(A)(ii). He was found not guilty of Interference with Commerce by Robbery and of Using a Firearm During and in Relation to a Crime of Violence Causing Death.

This memorandum will address the following issues:

(1) An argument against the Government's proposed offense level increase for other relevant conduct;

(2) An analysis of the § 3353 factors and other information in support of the Defendant, which should bear upon his sentence; and

(3) A sentence recommendation.

**I.     The Government's Proposed Offense Level Increase Is Improper As Other Relevant Conduct And Is An Unconstitutional Trial Tax.**

*A. The increased offense level the prosecution attempts to argue for the death of Malik Perry is not relevant conduct as contemplated by § 1B1.3(1)(A).*

The Government argues that the murder of Mr. Perry was "relevant conduct" justifying the increase from a base offense level of 23 to a base offense level of 46.

It begins by stating that Mr. McClinton committed this murder, despite the fact that he was acquitted at trial. It provides no additional information from that given to the jury, but asks that this Court find credible witnesses that the jury apparently did not believe to be truthful. The Government then states that it does not matter whether Mr. McClinton committed the murder or not—but there is a different standard for relevant conduct of others that would implicate co-conspirator liability for that conduct. It is not at all surprising that the jury acquitted Mr. McClinton of this conduct, as direct testimony at trial regarding the killing could not have lasted more than five minutes. *See* Transcript pp. 100–101; 211–212; 273. Not only was the testimony extremely brief, but it was inconsistent among the witnesses. *See* Transcript pp. 100–01; 211–12.

However, the Government further fails to show that the death of Mr. Perry falls within the scope of that Guidelines section. It states that *United States v. Jones* is "not dissimilar" factually, but in fact, *Jones* is dissimilar in all the crucial ways. First of all, the murder in *Jones* occurred during actual robbery. That made the conduct within the scope of the jointly undertaken criminal activity, in furtherance of that activity, and reasonably foreseeable. Second, the victim of the murder was the victim of the robbery. These distinctions are significant because they bear directly on the requisite factors for relevant conduct of others.

In the case at hand, the victim of the murder was one of the co-conspirators themselves. It also occurred well after the conclusion of the robbery. It was not made in furtherance of the agreed-upon crime and was not part of an attempt to avoid detection. The defendants had already avoided detection and were allegedly arguing, if we are to believe the testimony given at trial—which the jury clearly did not. Simply because the murder occurred close in time and involved some of the same people does not mean it is automatically relevant conduct for purposes of the Guidelines, and despite what the Government seems to think, being "inextricably linked" is not the standard for relevant conduct. It includes, beyond the acts of the defendant himself, acts of others that were (1) within the scope of the jointly undertaken criminal activity, (2) in furtherance of that criminal activity, and (3) reasonably foreseeable in connection with that criminal activity. Courts agree that acts of others that were not within the scope of the defendants' agreement are not relevant conduct—even if they were reasonably foreseeable. *See United States v. Hunter*, 323 F.3d 1314, 1319–20 (11th Cir. 2003).

Finally, the Government must prove the relevant conduct by a preponderance of the evidence. *United States v. Reuter*, 463 F.3d 792, 793 (7th Cir. 2006). However, the Fifth Circuit has left the "door open" to requiring a heightened burden of proof in some situations—though it has not yet done so—including in cases where relevant conduct determinations increase a defendant's sentencing range tenfold. *See United States v. Simpson*, 741 F.3d 539, 559 (5th Cir. 2014). It would seem that such a consideration is appropriate in this case—one of a teenage boy whose Guideline range increases to life with the finding of relevant conduct.

Here, the murder of a co-defendant was clearly not in the scope of the conspiracy. Had it been part of the agreement that Mr. Perry was at risk of being murdered after the robbery had concluded, it seems highly unlikely that he would join the conspiracy to begin with. This act

was not committed in furtherance of the robbery, since the robbery was over, and the perpetrators had left the scene. Finally, it was not reasonably foreseeable that Mr. Perry would be murdered after the robbery. There was no testimony at trial that the murder occurred to avoid detection or responsibility. In fact, it was alleged that Mr. Perry was killed because he wanted to run off with the fruits of the crime.

Even if, however, the Court finds that the killing of a co-defendant after the crime had concluded is relevant conduct, the Government has not met its burden of proving the conduct by a preponderance of the evidence. Indeed, there is hardly any direct testimony about the conduct at all. *See infra*. Therefore, the original offense level of twenty-three (23) should apply.

> B. *The addition of twenty-three (23) offense levels to increase Mr. McClinton's guideline range is an improper trial tax that unconstitutionally burdens the Defendant's Sixth Amendment right to trial.*

As discussed above, the Government seeks to hold Mr. McClinton responsible for the death of Malik Perry, something that was never sought to be added to his co-conspirators' offense levels despite the Government's clear position that all co-conspirators are liable for acts of the others.

Thus, if Mr. McClinton is to be liable for the death of Malik Perry as relevant conduct, the others must be held culpable as well. Because they were not, and it was never even argued by the Government that this was relevant conduct for the co-defendants, it cannot now be used against Mr. McClinton. This is a perfect example of the Government attempting to punish Mr. McClinton for exercising his constitutional right to trial.

Attached to this Memorandum are two scholarly works, *The Tyranny of the Trial Penalty: The Consensus that Coercive Plea Practices Must End* by Norman Reimer and Martin Sebelli, and *Plea-Trial Differences in Federal Punishment: Research and Policy Implications* by

Brian D. Johnson, Professor of Criminal Justice and Criminology at the University of Maryland. *See* Exhibits 1 and 2. These are but two of the many works of emerging scholarship that point to a profound and alarming decrease in jury trials in federal courts. The cause of the decrease is the effective transfer of sentencing power from the judge to the prosecution. The result of this transfer of power results in a constitutionally unacceptable additional penalty heaped on a citizen who asserts his constitutionally protected right to trial by jury—even, as in this case, the Defendant is acquitted of certain conduct. Additionally, it sends a powerful and improper message to other defendants that they exercise their constitutionally protected right to trial by jury at their peril and may not even be protected by the jury verdicts of not guilty. This Court has a responsibility to reject the prosecution's desired imposition of an improper trial tax.

In the Defendant's view, an appropriate case for trial is one in which the defendant has a credible claim of innocence on the major counts. The jury's acquittal of Mr. McClinton on half his charges, demonstrates that this was a proper case for trial.

The United States Constitution guarantees a right to trial by jury. Courts should zealously protect that right rather than tolerate a system that punishes citizens for asserting their rights. It would allow the Government to skirt their burden of proving Mr. McClinton guilty beyond a reasonable doubt and punishing him for the death of Malik Perry regardless of what the jury decided.

**II.     The Factors Laid Out In 18 U.S.C. § 3553 Weigh In Favor Of A Sentence Of 141 Months.**

The United States Code requires the Court to consider is the nature and circumstances of the offense and the history and characteristics of the Defendant. Here, the Defendant was just seventeen (17) years old at the time of the offense. He had very little criminal history other than minor juvenile convictions.

Mr. McClinton grew up in a dangerous neighborhood, seeing someone shot and killed for the first time at age seven—just barely old enough to attend public school. He was shot himself in 2016. Although he has never been diagnosed with mental illness, it would be short-sighted to assume that after witnessing such trauma at a young age that it did not affect his development as a young man.

18 U.S.C. § 3553 also asks us to examine the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, in addition to examining deterrence and protecting the public.

It is the Defendant's position that a sentence of 141 months (mandatory minimum of 84 months on the 924(c) plus the minimum Guidelines sentence of 57 months) would serve all these purposes adequately. Indeed, that is what the Guidelines contemplate. They have also taken into account the questions of deterrence and protecting the public, both of which would be satisfied by a sentence that ultimately totals almost twelve (12) years.

### III.   Sentencing Recommendation

Due to the foregoing, and especially because of the Defendant's age and criminal history, Mr. McClinton requests a sentence of 141 months. This is the minimum sentence required for his conviction under 18 U.S.C. § 924(c)(A)(ii).

Respectfully submitted,

/s/ *Joshua S. Moudy*
Joshua S. Moudy, #26513-49
KAMMEN & MOUDY
135 North Pennsylvania St., Suite 1175
Indianapolis, Indiana 46204
Telephone: (317) 236-0400
Facsimile: (317) 638-7976
Josh@kammenlaw.com

## **CERTIFICATE OF SERVICE**

      I certify that a copy of the foregoing was served upon all counsel of record by electronic service via PACER/ECF on this 13th day of March, 2020.

Peter Blackett
Michelle Brady
Office of the United States Attorney

                                                                /s/ *Joshua S. Moudy*
                                                                Joshua S. Moudy #26513-49